Case this morning is Case 4-150841 Corey v. Lewsader. Did I pronounce that correctly? Yes, you did. Okay, good. I believe the plaintiff's name is Coe and I believe there was a mistake when you identified him in the first office this morning. So rather than Corey, it's Coe. I see that and I apologize. It is Coe. It was listed wrong on the sheet, but I should recognize that. And for the appellant, we have Michael Reagan and Mark Jackson. And Mr. Reagan will be doing the arguing, as I understand it, for the Appellee Heat Uppencamp. All right, Mr. Reagan. May it please the Court, my name is Mike Reagan and together with Mark Jackson, we're seated at the council table. And Mr. Uppencamp, we are here to argue on behalf of the defendants, Mr. and Mrs. Lewsader. My argument today is going to be confined to Certified Questions 2 and 3, and as to the others, we will leave those for the briefs. Certified Question 2 asks whether a dog lying in the middle of the road constitutes an overt action toward the plaintiff for purposes of the Animal Control Act. The question assumes that an overt action is required and plaintiff does not argue to the contrary and that is consistent with the case law. This Court's opinion in Bailey v. Bly in 1967 is a foundational case on this and it has stood the test of time. There, a dog had moved from one position to another, unbeknownst to the plaintiff, who was burdened with a suitcase and other things that she was carrying, and she stepped on the dog and fell. The Bailey court said there that there was no overt act, vicious or otherwise, and the court will not impute to the legislature an imposition of liability, absolute in all respects, when there is no factual or reasonable basis other than as a pure penalty for dog ownership. The court said that that which is missing is behavior or activity on the part of the dog which caused the injury. King v. Oren, First District, 1990, followed Bailey expressly and said some sort of overt act on the part of the dog is required. And the court said that we do not agree that any overt act is sufficient, meaning in the context that not just any overt act will qualify, but it has to be something relating to the nature of the dog. It says an animal is a passive causal force and cannot be a proximate cause if it stands still or moves away from a plaintiff in a usual, predictable manner. Both sides have brought in some cases from other jurisdictions. We realize they're purely persuasive or perhaps even not persuasive, depending upon what you think of them, but we offer them as being persuasive. And the Minnesota Appellate Court in Mueller, in discussing the Minnesota Supreme Court case, said that when the legislature put injures in tandem with attacks, the legislature intended to cover a dog's affirmative but non-attacking behavior, which injures a person. But no issue has been raised here as to whether an overt act is required. So the question is whether the action of this dog, stipulated to be, quote, passively lying in the road, constitutes an overt action. The Animal Control Act is to be narrowly construed, as this court said in Ennin v. White, that is narrowly construed against the person seeking to recover under it. And the court in many cases say that the initial legislative intent was modest to reduce the burden on plaintiffs of the one-bite notice rule. Now, obviously, the use of the act has expanded beyond that, but nonetheless, that phrase is often repeated, that the intent was modest on the part of the legislature. And it's also said in many cases, we've cited in the brief, of course, that the legislature did not intend to create strict liability. Allen v. State Farm is a Wisconsin case. And there the court recognized the role of what Wisconsin calls public policy, but which, as we explained in the brief specifically, is the legal cause branch of the Illinois definition of proximate cause. And there a dog was sleeping behind the chair of a woman who was a dinner guest, and the woman didn't know it. She didn't see the dog. She turned and fell. And the court said there has to be a just or sensible stopping point. Public policy, remember that's legal cause, necessarily precludes such an expansive application of liability. Legal cause in Illinois is expressly defined in all the cases, including recently from the Supreme Court, to include a public policy analysis. In Tercios, an Illinois Supreme Court 2015 opinion, the court said in looking at the definition of legal cause as a branch of proximate cause, that the question is one of policy. How far should a defendant's legal responsibility extend for conduct that did, in fact, cause them harm? And it is recognized in Bailey, elsewhere, in many cases, that this act cannot be interpreted to be a pure penalty on the fact of dog ownership. Now, the plaintiff argues that in both Bailey and King, the two cases I just mentioned, the dog was on the defendant's property. True. But neither court attached any significance to that whatsoever. They didn't say anything about it. They didn't discuss it in a legal context. It just happened to be where the dogs were at the time. Rather, those courts focused on the passivity and normalcy of the actions of the dogs. The plaintiff relies on Taylor v. Hall, which is an older case where an animal, a dog, was moving across the highway at the time. And the court, that court, only said that the dog was moving, but didn't discuss it in terms of how that fit into the overt action requirement. So if that case, Taylor v. Hall, which is the plaintiff's primary case, is to be the controlling paradigm, then going forward, this court's opinion in Bailey v. Bly, also the opinion in King v. Oren, those fact situations when they come are going to have to be decided differently. Those dogs move. So you're saying this court should find that Taylor v. Hall was wrongly decided? You don't have to do that because this dog... Well, we would implicitly be doing that, no? No. Why not? And we know especially you don't have the power to do it. The Supreme Court is saying that with frequency these days. And we're not asking you to. And I simply point out the factual difference, that that dog was moving across the highway. This dog was passive, stipulated to be passive. There's no question about it. And so it could have been a tire. It could have been a piece of wood. It could have been a puddle. It could have been an ice patch. It could be anything. There's nothing about its quality of a dog as a dog which caused that. So Taylor was movement. This case is not movement. So does that expression mean a dog acts like a dog? I don't get that. Like a dog laying in the middle of the road, 2 o'clock in the morning, it's probably nice and cool. That's kind of a dog acting like a dog. Well, other than the cool aspect, I frankly hadn't considered that part. But it was not acting. So when you talk about the Animal Control Act, the legislature is trying to get at what happens when people own dogs. And when the dog is not exhibiting any quality of an animal, it could have been dead. It could have been a branch. It could have been anything. And that's as sharp a point as I can put on it. There's nothing about what the dog did that relates to something that the legislature might have been doing. Do we know precisely what the dog was doing at the time of the collision? We do because both the court and us are confined to the facts. And the stipulated facts set is the dog was passively lying in the road. That's the exact wording of the, I think, five stipulated facts. So for purposes of this case, we do know. Would you agree that under Taylor, if the dog was crossing the road, if we followed Taylor, you would lose in this case? I would. So really it comes down to whether the dog's laying down or standing up? Or moving. Or moving. Okay. If the dog's standing there, it's one thing. If the dog's actually taking a step or two and moving, that would be something different. Actually, it is something different. And the other thing is, is that this court, of course, is not bound by Taylor v. Hall. It's a 1972 amendment. Right. And you said earlier that we didn't have the power to overturn it, but I didn't use that expression. I said finding it was wrongly decided. I know you didn't. Okay. I was just enjoying the moment. Well, let me ask you this. Where does this term, overt action, come from? That's not in the statute. What court decided that that, what the statute meant to say, overt action, even though it didn't? This court did. Okay. In Bailey v. Bly, 1966. This court then decided that it required an overt action, even though that is not part of the statutory scheme? That's true. Many courts have agreed with King v. Bailey, or Bailey v. Bly v. Bailey, this court's opinion. Many courts have agreed with it. No court has disagreed. The plaintiff is not argued here. I noticed that. Okay. Otherwise, it would have been a certified question, which was agreed upon. And so I think the larger question is, we have cited the cases. I can guess at their names, but I don't recall for sure. But we have clear expression in the brief that even if the plaintiff nominally brings himself within the plain language of the statute, that nonetheless, there is still room for interpretation by the court to try to gauge what the legislative intent was. And we've offered a number of examples where the courts have done that over the years. And so when you ask me whether overt action appears in the statute, it doesn't. You said it was this court. What year was that case? 1967, I believe. In any event, the legislature hasn't done anything to the statute by way of amendment since this court issued that decision in the late 1960s. That's true. And in 2015, the Illinois Supreme Court recognized the principle of legislative acquiescence to decisions of the court. Certified. So, you know, we're asking. I want to go back to one thing, and that is Prosser. You were talking with me about the movement of the dog, et cetera. And Prosser has a very famous sentence, not on dogs, but about on proximate cause in general. And he says that the causes of an event go back to the discovery of America and beyond. So the argument you're going to hear in just a minute is that the overt action was that the dog walked out onto the highway. And it's true that it probably did, although we don't know that from the facts. But Prosser says, look, you know, the courts, in defining what proximate cause is, which is where that Prosser sentence comes from, you have to draw a line somewhere. And we suggest that this is where the line should be drawn. If I can shift, please, to certified question number three. The question is before you do, Mr. Reagan, if the court answers certified question number two in the negative, does that then dispose of the court's consideration of questions one, three, and four? I have thought through that process. If it answers question number two in the negative, that there was no overt action here, then it would dispose. Then we would essentially be saying that the Animal Control Act does not apply. Yes, yes. Then that does negate the need for the court to reach any of the other questions in the case, because the act does not apply, and therefore there were no other questions. And so that's a great logical point as the starting point. That's not why I chose it as my first argument, but it is indeed a great reason why the court might want to. Certified question number three, if I can move to that, is whether comparative negligence can be a valid affirmative defense. Or the flip side of that is whether a First District case called Johnson v. Johnson, which says that comparative negligence is not an affirmative defense, available whether that's precluded in the Animal Control Act cases. Johnson held that squarely. We think with poor logic, but squarely. Galloway v. Kuhl from the Fifth District in 2004 held that comparative fault is a defense under the domestic animals running largely. And we have cited Ziers v. Davidson, which says that these two acts are in pari materia, and therefore should be interpreted in the same manner. Not that you have to come to the same conclusion all the time, but nonetheless, interpret them in the same vein. Harris v. Walker from the Illinois Supreme Court in 1988, and Vander Lye from the Second District in 1980, and there are others, but Vander Lye is a very expressive case, hold that assumption of risk is a defense under the Animal Control Act. Both assumption of risk and comparative fault, or contributory negligence back then, were both common law defenses to animal acts. So the Supreme Court has said that assumption of risk, one of those two, is a defense under the Animal Control Act. So the question is now the other part of that, which is whether comparative fault is also a defense which should be recognized. I think we, I hope that we have respectfully set out in our brief why we think Johnson was wrong, wrongly decided. And the plaintiff has not taken up any of the arguments we made as to why Johnson was wrongly decided. They say it's correct, but they don't go into the points which caught my eye. So there, the court did not, the Johnson court did not accept the argument made by the plaintiff there that because provocation was an expressive defense, said so by the legislature, that there's no ability to consider any other defense. The court said, no, we're not going to do that because, among other things, we noticed that the Supreme Court permitted assumption of risk to be brought in, and that isn't mentioned in the statute either. So they rejected that argument, that merely mentioning one excludes the possibility of any other being incorporated. Johnson court, however, said that comparative negligence is not a common law defense because of the passage of 2-1116. One of the problems with Johnson is that the defendant there, I don't think, fully engaged the court on that point because the defendant there was trying to say that, well, the conduct involved in that case, this was a young girl who walked behind a horse, they said it was essentially provocation. And therefore, because it says provocation is a defense, well, then let us have comparative fault too. Our case is wildly different than that because the comparative fault here has to do with the operation of the motorcycle and has nothing to do with the interaction with the animal. Whereas in Johnson, it was the interaction with the animal, and the question was to walk behind a horse, is that provocative, is that comparative fault, et cetera. Mr. Reagan, there were counts based on negligence that were dismissed, and obviously comparative fault would have been available there. Does the record tell us what the status of those counts is? I don't know. I wasn't in the case at that point. I should know that. It was a voluntary dismissal without prejudice, and I don't know, sitting here, whether or not the record indicates those negligence counts are viable or not. Well, if they were dismissed without prejudice, there they, like the dog, lay. And so long as the case is alive, and I suppose they are still alive in terms of jurisdiction and power of the court, but I can't express anything beyond that. Johnson cites only two cases for its proposition that comparative is not available in the Animal Control Act case. The first case was Beckert, and the Johnson court said in Beckert it wasn't an issue. But of course it wasn't an issue in Beckert because the plaintiff in Beckert was a three-year-old child, and the entire statement in Beckert is that comparative fault is not an issue because somebody under seven can't be at fault. And that was the entire issue there. The only other case they cite is Nelson v. Lewis, and that didn't involve the issue at all. And the court said in incidental passing, keeping in mind that comparative fault was not an issue in the case, said that in Animal Control Act cases comparative fault doesn't apply, but the only cite they made was to Beckert, which was the three-year-old case. The courts do have the power to recognize comparative as a defense here. Johnson never examined the question as to whether, despite 2116, and we'll be coming to this in a moment, the courts have the power to recognize comparative as a defense in something that is not specifically mentioned in 1116. We've talked about the fact that for the analogous common law torts, both contributory negligence and assumption of risk were available defenses. The Supreme Court adopted comparative negligence as a judicial act. It said it was replacing one. It had the power to replace one judicial doctrine, contributory negligence, with another judicial doctrine, common law doctrine, which is comparative negligence. And the court said in Alice, and said again in Burke v. 12 Rothschilds, that the statutes across the country are very vague, very simple in this area, and that it is a cooperative enterprise between the courts and the legislature to refine the operation of the doctrine going forward, and it knew that many collateral questions were being left open. So one of those was answered by the Supreme Court in Burke v. 12 Rothschilds, where the court said that you can't compare the comparative fault of a plaintiff with the conduct of a Wilfrin I defendant. 1116 doesn't address that at all, but the court did, and said, here's how we interpret the doctrine. The plaintiffs did not respond to our citation of Chew v. Bowers from the Third District, where the court held that the tender years doctrine applies, that is, a child is incapable of negligence. And that cannot be, somebody under that age cannot be held to be comparatively negligent, despite the language, the literal language of 1116, which would not preclude, or which would not necessarily embrace that rule. So if, however, you say, look, we'll need to find some tie in the language of 1116, then we've cited Stoichovitch v. the Mnannach building for the proposition that the word negligence is a generic term referring to intentional and non-strict liability acts in a statute, and there it was, the punitive damage claim. So, Reagan, you are out of time, but you'll have rebuttal. I am. Thank you. Okay. Thank you. Mr. Uppenkamp. May it please the Court. My name is Heath Uppenkamp. I represent the plaintiffs, Mr. and Mrs. Coe, in this matter. As the Court knows, there are four issues certified for review, and I will attempt to address all of them. I know counsel only addressed two. I think the two that weren't addressed are also important, and so with respect, I would like to briefly address those as well. The first one I would like to address is whether or not a person is in a place that he may lawfully be as long as he's not trespassing, even if he is, in fact, intoxicated and speeding. In Garcia v. Nelson, which is a Second District case, the Court discussed that element of liability under the act at length. The plaintiffs in Garcia filed an action against defendant dog owners when the ATV that the plaintiffs were riding on collided with the defendant's dog. One of the issues on appeal was whether the plaintiffs were in a place they had a legal right to be. It was an issue in that case because it was illegal to ride the ATV on the roadway. The Court in Garcia established that the act only requires that a plaintiff plead and prove that he was in any place he may lawfully be, and therefore only requires that a plaintiff not be trespassing on real property. Moreover, the Court in Garcia explained that this element of liability does not consider what an individual is doing on the land, or how he or she arrived there, or whether he or she is violating the law while he or she is in that location. And to quote the Garcia Court, the basic purpose of the act does not support treating a plaintiff who is in a public place less favorably, merely because he is violating a law of whatever sort. Therefore, as to that certified question, this Court should answer it such that a person is in a place he is lawfully entitled to be under the act as long as he is not trespassing. Next, I will address the question of whether a person is peaceably conducting himself if his conduct does not arouse the fighting instincts of the dog, even if he is intoxicated in speed. This Court should again follow the Garcia Court and hold that a person is peaceably conducting himself if his actions would not arouse the fighting instincts of the animal. In Garcia, the trial court had granted summary judgment in favor of the defendant, and the plaintiffs appealed, and the appellate court reversed. In addition to the trespass element just discussed, the other issue on that appeal was whether the plaintiffs were peaceably conducting themselves at the time of the incident, even though they were riding the ATV on the roadway illegally. The Garcia Court recognized that, quote, because not every unlawful act tends to cause turbulence or public disorder, one may violate the law while still acting peaceably, end quote. The Garcia Court cited to a Missouri case favorably, which was State v. Cooper, and in that case, a defendant had carried a concealed gun across the state while intoxicated, and the court said he was still acting peaceably, again, because his actions would not arouse the fighting instincts of the animal. The court in Garcia acknowledged that unpeaceable conduct through either wrongful or unlawful action refers only to actions the victim should have known would rouse the dog to defend himself with force. Therefore, we would ask this court to follow the Garcia Court and answer that certified question that a plaintiff is peaceably conducting himself as long as his conduct would not arouse the fighting instincts of the animal. I will next address the question of whether the doctrine of comparative negligence is a valid affirmative defense under the Animal Control Act. This court should again follow Illinois precedent and hold that comparative negligence is not a valid affirmative defense under the Animal Control Act. Counsel mentioned Johnson v. Johnson, which is really the only Illinois case to firmly address the issue. And I guess I would point out that the Johnson court didn't give a two-sentence holding, and by the way, there is no affirmative defense of comparative negligence. The court went through an exhaustive analysis. And the court specifically noted that the Animal Control Act, its failure to specifically provide for an affirmative defense, does not preclude the availability and application of that defense. For instance, the court pointed out that the Act did not preclude the application of the common law affirmative defense of assumption of risk, despite the fact that that defense did not explicitly appear in the language of the Act. More importantly, though, the Johnson court noted that in contrast to the defense of assumption of risk, the defense of comparative negligence is not a common law defense. The comparative negligence defense is codified and specifically states it applies to all actions based on negligence and strict product liability.  Therefore, the Johnson court rightly determined that the plain language of the Animal Control Act, in combination with the plain language of the comparative negligence statute, supports a finding that comparative negligence is not a valid affirmative defense to the Act. It appears what the defendants in this case are asking is simply for the court to ignore the language of the Act and take it further. And earlier the court noted that the idea of over-action was recognized by the court and the legislature has just let that continue on. And so the plaintiff, in fact, today recognizes that the courts have long established that an over-act, as the courts have held, is a requirement. Even though not within the statute, the courts have all continued to hold that it is a requirement. And the legislature letting that go should be given some credence. In this case, Johnson was decided about 10 years ago and the legislature hasn't corrected the Comparative Negligence Act. It hasn't said, oh yeah, the Johnson court said, no, no comparative negligence in the Animal Control Act. We think it should apply in the Animal Control Act. We better amend that statute. It hasn't. This court should follow the plain language of the statute and hold that comparative negligence, just like in Johnson, should hold that comparative negligence is not a valid affirmative defense under the Animal Control Act. Before moving on, I would point out that the Johnson court noted that its findings are consistent with holdings of other jurisdictions interpreting similar statutes that require the absence of provocation to recover for injury sustained by an animal. The court in Johnson noted that Michigan, Arizona and Minnesota have statutes nearly identical to the Animal Control Act and comparative fault has been held not to be a valid affirmative defense under their statutes as well. Mr. Hoppenkamp, you may be there at this point, but question number two. Do you acknowledge as potentially dispositive? I do, Your Honor. If the court determines that a dog lying in the road did not constitute an over-action, I do believe that it is the case. Okay, a question for you. This dog, the evidence was it was alive, but lying passively in the road. Correct. What if the dog had been hit by a car and was lying dead in the middle of the road and your client then struck the body and this accident ensued? Any different result in your mind? Animal Control Act apply or not apply? I apologize, Your Honor. I don't know whether the Animal Control Act applies to dead animals or not. Well, the act says where an animal attacks or injures. Right. So what we're talking about is basically a motionless animal, basically an animal's body and its position in the road having resulted in this accident. And so just, you know, working our way backwards from that, what we're really talking about is its presence alone is what you're saying caused this accident and brings into play the Animal Control Act. Right. And I don't know this because I haven't done the research. I guess my suspicion would be that a deceased animal probably wouldn't fall under the Animal Control Act. But in this case, the stipulated facts are that it was alive and lying there. And I recognize the court saying a dead animal's lying there, a live animal's lying there, what's the difference? And the difference with regard to the dead animal is it just doesn't fall under the statute because it's dead. In this case, the animal, the overt act is the animal going out into the road, lying down there. And that is, the defense tries to make a distinction between, or tries to lump it all together. Well, in any case, the animal's moved from one place to another. Well, in this case, the animal has moved to a place that it shouldn't be. And all of the other, and cannot reasonably be expected to be, that a motorist is not expecting a dog to be on the road at 2 a.m. in the morning. In those other cases, when the dog's at the residence, lying on a porch, or walking in the kitchen. And in King, the court recognized specifically that the plaintiff was aware, because the plaintiff had been in the kitchen many times, the court noted that, and the quote from King was, an animal is a passive causal force and cannot be a proximate cause of injuries if it stands still or moved away from the plaintiff in a usual predictable manner known to the plaintiff. In that case, the dog was moving in a predictable manner known to the plaintiff, because it was in the defendant's residence. There's a big distinction between whether a dog should be in the road and whether a dog should be in the kitchen, in the residence of its owner. And I think that's the biggest distinction that has to be made in this case, and with regard to the argument. With regard to Taylor v. Hall, I think counsel's argument was, well, if the dog had been walking, it would be a different result. Well, in King, the dog was walking, but the court said, no, still no overt action. It's not whether the dog is walking, it's whether the dog in King was moved away from the plaintiff in a usual predictable manner known to the plaintiff. There's no right-line rule that can be drawn with regard to, well, if it was trotting, it was sprinting. I think the defendant would recognize if the dog darted out in front of the car, okay, that's an overt action. Well, if the dog was kind of jogging across the road, is that an overt action? If the dog was walking, is that an overt action? That's misapplying the analysis. The overt action is going to the place that it shouldn't be. Now, there's another distinction that must be made here, and that's the distinction between an overt action and a proximate cause. And I think the defendants in this case try to tie those two things together. And while it may be true that if there is no overt action by the dog, the courts have said, well, then there's no proximate cause. But there can be an overt action by the dog, but still no proximate cause. For instance, the dog that darts out in front of the road and a motorist hits it, that doesn't make the dog automatically a proximate cause of the accident. Maybe the motorist wasn't paying attention, the dog shouldn't have caused the accident. He was driving an 18-wheeler and should have never caused an accident. He was distracted, whatever it may be. In this case, the court is asked to answer the question not whether the dog was a proximate cause of the accident. The court is asked to answer the question whether the dog had made an overt action. Going out onto the road where it should not have been is the overt action. In the courts so far in this case. Counsel, I can understand mothers telling a 5-year-old, don't walk out into the road. I'm not so sure that the instructions to a dog, don't walk out in the road, is comparable to that. If I understand your Honor's question, I agree that it's not. The owner's actions really have no bearing on the ultimate result under the Animal Control Act. The purpose of the Animal Control Act is to say, well, you didn't do anything necessarily wrong. It's not a negligence case, but your dog did something that hurt somebody else. And in this case, the owner's dog did something that hurt somebody else. And you're saying it was the act of traveling to the position. Right, to where it was. In all fairness, it's sort of my question is whether or not it being in that position, lying in the middle of the road, constituted an overt action. It doesn't say, does the dog's act of traveling to the road constitute an overt action. Really, you're suggesting we answer a different question that hasn't been posed. Well, that being, you don't need to answer that. Mr. Reagan would say, if Bailey and King would have been decided differently, had it been the determining factor that the dog had to travel to get to that motionless position in front of the plaintiffs in those cases. What do you say to that? I say, Your Honor, the distinction is where the dog traveled to. The dog on someone's property, the dog owner's property, can reasonably be expected to travel to a place somewhere else on the property. It can be expected that, you know, the dog was on the porch, the person's walking out with the suitcase, it says move, so the dog moves. The person can reasonably expect that the dog was going to move somewhere else on the property. And so, the same holds true in King, where the dog was walking. It can reasonably be expected that the dog is moving from wherever it was alongside the person walking in the kitchen. It's not reasonably expected that the dog is going to go to a place that it should not be, which is in the middle of the road at 2 in the morning. And counsel mentioned before, it's not clear how the dog got to the road. There's only one way the dog gets to the road. It went out to the road. I think it's inherent within, and maybe I should bear some responsibility for framing that certified question without including traveling to the road and lying down there. But in fact, that is surely what happened in this case. I don't think there's ever been a suggestion that the dog was dropped there by the owner. So, the dog surely traveled out to the road. I believe in answering your Honor's questions, I covered all the points I wanted to make with regard to whether the dog had made an overt action by going out to the road where it should not be. Unless the court has further questions. Well, you're making it almost sound like you need to get into the mind of the dog. What if the dog was just walking along the road and all of a sudden had a coronary and then ended up laying down on the road because it was in stress? Is that still an overt action? Well, again, I think the overt action is going to a place that it shouldn't be. If the dog ended up on the road, it's in a place it shouldn't be, period. Whether it had a coronary and that's why it laid down there, or whether it laid down there to rest, the overt act is going to the place that it should not be. And so, again, I guess that goes to whether the dog's dead or alive. I don't want to confuse that because I don't know the answer to whether the animal control act specifically applies to a dead dog. But the point remains that even if the dog is dead, it's in a place it should not have been because it shouldn't be in the roadway. And that's the overt action going to that particular spot. Thank you very much. Is there any rebuttal? I'll just get some points quickly. Bailey v. Bly really involves the dog's body as a body, so to speak. It was alive, but it was on the steps and it did nothing. It was simply a body. Secondly, the concept of overt action really includes proximate cause. And this court, in Bailey v. Bly, in writing about overt action, which is what we're talking about here, in the very paragraphs which talk about overt action, says that that's what's missing in this case, is behavior or activity on the part of the dog which caused the injury to the plaintiff. So overt action is two words, which is really a shorthand phrase for overt action which caused. And that's where proximate cause clearly comes into the certified questions. Three more quick points, if I could. There is nothing about 211-16 which suggests, either in terms of its history or in terms of its words, which suggests that the legislature intended to either preempt or abrogate the role of the courts, this cooperative role of the courts in the legislature in developing the law. And the plaintiffs have not argued to the contrary. They haven't said that this court does not have the power to include comparative fault as a defense in this case. In this court's opinion in 2015 in Gillespie Community v. Union Pacific, which was written for the court by Justice Appleton, the court did look to the words of 211-16 to examine an issue as to whether comparative fault was available there. But I would respectfully suggest, being on the outside looking in, that the controlling fact there was the court's holding that the primary principle of mine subsidence law is completely contrary to the antithetical to the concept of comparative fault. It's either there's either subsidence and you're liable or there's no subsidence and you're not liable. That's basically what the court said. The exact opposite is true in this case. Contributory negligence has always been an available defense in common law animal-related actions. The last thing I'd like to say is that we've said that under the Galloway case, that comparative fault is a defense in an animal-running-at-large act. Johnson says it's not under the Animal Control Act. The plaintiff's only explanation as to why that might be so is to say that the animal-running-at-large act is based on negligence. And it's not. Even Galloway itself says that both cases start with... The use of the phrase strict liability has various meanings in different contexts. But the liability under the running-at-large statute is strict liability, statutory liability in the first instance, just as it is under the Animal Control Act. It's just that in the animal-running-at-large act, the legislature has said that a defendant can attempt to escape it by attempting to prove that the defendant was not negligent. So you can't explain Galloway by saying that the animal-running-at-large statute is a negligence act, because it's not. It is strict liability, and Galloway plainly says that. If we say that in the brief, there's no question I will leave. I see none. Thank you. Thanks to both of you indeed. And the case is submitted. Court stands in recess.